UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                    Criminal Case No. 4:17cr76

Elmer Emmanuel Eychaner,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion to compel production of evidence filed by Defendant Elmer Emmanuel Eychaner ("Defendant"), requesting that the Court order the Government to transfer evidence of child pornography from Newport News, Virginia, to a Government facility in Spokane, Washington, where Defendant's expert can view the evidence. Def.'s Mot. Compel 1, ECF No. 14. Defendant argues that the Government has not made the evidence "reasonably available" to him as required by 18 U.S.C. § 3509(m)(2). Id. at 5. For the reasons noted below, Defendant's motion to compel production of evidence is **DENIED**.

## I. Background

On August 16, 2017, Defendant was charged in an indictment with the following five counts: Access with Intent to View Visual Depictions of Minors Engaging in Sexually Explicit

Conduct, in violation of 18 U.S.C. §2252(a)(4)(B) (Count One); Attempted Receipt of Obscene Visual Representations of the Sexual Abuse of Children, in violation of 18 U.S.C. § 1466A(a)(1) (Count 2); Destruction of a Tangible Object to Impede a Federal Investigation, in violation of 18 U.S.C. § 1519 (Count Three); Obstruction of Justice - Attempted Evidence Tampering, in violation of 18 U.S.C. § 1512(c)(1) (Count Four); and Penalties for Registered Sex Offender, in violation of 18 U.S.C. §2260A (Count Five). Indictment, ECF No. 1.

These charges arise from Defendant's alleged conduct while on lifetime supervision from a prior conviction for possession of material containing child pornography. Gov.'s Opp'n Br. 2, ECF No. 17. While on supervision, Defendant allegedly installed a program onto his laptop called "Cortona," which utilizes voice command technology to operate various computer programs. Id. This was allegedly done to thwart the U.S. Probation Office's computer monitoring software program, which operates by monitoring keystrokes. Id. Using Cortona, Defendant allegedly was able to view numerous "anime" images of child pornography, as well as one or two images of child pornography involving actual children. Id. The Government claims that Defendant later broke his computer, removed the hard drive, and cleared his search history. Id.

The evidence at issue in the motion to compel consists of roughly 600 screenshots captured by the Probation Office's monitoring service, Remote.com, that purportedly show the search terms Defendant used, the images he viewed, and records his internet usage on the relevant date. Def.'s Mot. Compel 2, ECF No. 14. The Government argues that, by making the screenshots available to the Defendant for review at a facility in Newport News, the evidence is reasonably available to Defendant, satisfying the Government's statutory obligation. Gov. Opp'n Br. 5, ECF No. 17. Defendant, however, argues that the evidence is not reasonably available for review by Defendant's digital forensics expert. Def.'s Mot. Compel 8-9. The expert is located in Washington State, and Defendant asserts that it is unreasonable to require the expert to review the screenshots in Newport News because doing so would cost the defense $5,470 more than it would to review the evidence in Washington. Id.

Defendant requests that the screenshots be sent either by mail or by password-protected, encrypted email from the Newport News facility to the Government facility in Spokane. Id. at 9. He notes that the U.S. Attorney's Offices in Norfolk, Richmond, and Alexandria have sent evidence containing child pornography in numerous other cases to Spokane for review by the very same expert. Id. at 3-4. He also notes that U.S. Attorney's Offices in several other districts have also permitted the transfer of

3

evidence containing child pornography to Government facilities in Spokane. Peden Decl. 4, ECF No. 14-3. The Government replies that any such transfer will be of limited use to a digital forensics expert,[1] and that the reproduction of the child pornography is, in and of itself, a harm that § 3509(m) was designed to prevent. Gov.'s Opp'n Br. 9-10.

## II. Applicable Law

In a criminal prosecution, Federal Rule of Criminal Procedure 16 requires that "the government must permit the defendant to inspect and to copy or photograph . . . data [] [and] photographs . . . if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial." Fed. R. Crim. Pro. 16(E).

In child pornography cases, discovery under Rule 16 is modified by 18 U.S.C. § 3509(m). This section provides that "[i]n any criminal proceeding, any property or material that

---

[1] The Government's response is unclear as to why the instant case is different from other cases in which it has agreed to transfer evidence containing child pornography to Spokane. The Government simply notes that the other cases "involved the reproduction of a mirror image of a computer hard drive" and that this case involves screenshots of Defendant's computer activities. Gov.'s Opp'n Br. 9. As far as the Court can tell, the Government distinguishes this case solely on the ground that it believes that the defense expert will not be able to use the evidence as effectively as would experts in other cases. Id. Defense counsel claims that the Government initially refused to transfer the evidence because of concerns about the security of mailing images of child pornography. Def.'s Mot. Compel 3-4. Defendant has explained that the screenshots could alternatively be sent by secure email, id. at 9, but the Government has not responded to this suggestion.

4

constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court." 18 U.S.C. § 3509(m)(1). The statute also provides that "[n]otwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography . . . so long as the Government makes the property or material **reasonably available** to the defendant." § 3509(m)(2)(A) (emphasis added). Evidence is reasonably available if "the Government provides **ample opportunity** for inspection, viewing, and examination **at a Government facility** of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial." § 3509(m)(2)(B) (emphasis added).

### III. Discussion

Defendant's motion primarily relies upon United States v. Knellinger, 471 F. Supp. 2d 640 (E.D. Va. 2007) to argue that this Court has the authority to compel the Government to transfer the requested evidence to the Spokane facility. See Def.'s Mot. Compel 6-7. This reliance, however, is misplaced because Knellinger involved facts establishing that analysis at a Government facility would be so costly as to make it infeasible. Id., 471 F. Supp. 2d at 648-49. In Knellinger, one

defense expert stated that he would charge $135,000 to analyze the child pornography evidence at his own facility, but would charge $540,000 if forced to analyze the evidence at the Government's facility in Richmond, Virginia. Id. at 647. Moreover, the expert also expressed concerns that his equipment might not be reliable after moving it to Richmond, and stated that he would not agree to work on the case if forced to use the Government facility. Id. A second expert testified similarly, stating he would also refuse to work on the case if required to use the Richmond facility. Id. The court, noting that the expert analysis was required for the defendant's legal defense and that analyzing the evidence at the Government facility would be so prohibitively expensive as to preclude such analysis, found that the Government had not provided "ample opportunity" for the defendant's experts and counsel to review the evidence. Id. at 649. The court then ordered the Government to produce a copy of the hard drive and transfer it to defense counsel. Id. at 650.

Knellinger is inapposite to the instant case. In the Court's view, Knellinger stands for the proposition that, where the use of a particular Government facility would be so prohibitively expensive as to preclude expert analysis, a court may order the transfer of the evidence either directly to defense counsel or to another Government facility. Here,

Defendant has not alleged that the additional cost of $5,470 for the expert to examine the evidence in Newport News would make analysis infeasible. Additionally, numerous courts faced with facts similar to the instant case have held that the additional cost or inconvenience of traveling to examine evidence at a Government facility does not deny a defendant "ample opportunity" to review the evidence. See United States v. Hornback, No. CRIM.A. 3:10-13, 2010 WL 4628944, at *3 (E.D. Ky. Nov. 8, 2010) (noting that "*Knellinger* is clearly distinguishable" and that the defendant "has not provided evidence that the costs are so high in this case as to make Lakes' analysis infeasible. To the contrary, he has merely said it would be difficult, require driving, and increase costs. Those factors do not deny 'ample opportunity.'"); United States v. Doane, 501 F. Supp. 2d 897, 902 (E.D. Ky. 2007) (noting that defense counsel conceded that requiring an expert to travel from Kentucky to Indianapolis, Indiana, to review the evidence would not be "unduly burdensome" and provided "ample opportunity" under the statute, and indicating that this understanding was supported by the court's view of Knellinger and other relevant caselaw); United States v. O'Rourke, 470 F. Supp. 2d 1049, 1058 (D. Ariz. 2007) (finding that the defendant was provided "ample opportunity" under the statute where his defense counsel and experts had to travel from Ohio to Arizona to examine the

evidence); United States v. Burkhart, No. CRIM. 06-14 ERIE, 2006 WL 2432919, at *1 (W.D. Pa. Aug. 21, 2006) ("Defendant also argues that the contents of the hard drive at issue cannot be made reasonably available to defendant because the defense expert is located far from this jurisdiction and thus will entail substantial, unreasonable, and undue expense. However, the relevant standard does not consider expense or location of the expert as factors to consider when determining whether the material is reasonably available to a defendant.").

The above-cited cases are persuasive for the proposition that a defendant is not denied "ample opportunity" under the statute when the Government insists on a review occurring at a particular Government facility, so long as the cost of such review does not preclude a necessary defense expert's analysis.

While the cases cited above do not explicitly address whether the Government can be required to transfer evidence to another Government facility that is more convenient for a defense expert, at least one court has found that the statute does not require such transfers. In United States v. Maness, No. 10-20348-SHM-DKV, 2012 WL 2577531 (W.D. Tenn. May 25, 2012), R. & R. adopted, No. 10-20348, 2012 WL 2577528 (W.D. Tenn. July 3, 2012), the court explained its view as follows:

> At the hearing, the defendant claimed that it was burdensome for the defendant's expert to visit the Memphis FBI field office and that it would be much

more economical to allow the defendant's expert to inspect the image at the Boston FBI field office. The image, however, is still reasonably available because the government has provided the defendant "ample opportunity" to inspect the image at the Memphis governmental facility. *See* 18 U.S.C. § 3509(m)(B). The statute does not require the government to make the image available at whatever facility the defendant requests it to be, and this court believes that keeping the image in Memphis also prevents unnecessary exposure and dissemination of the photo.

Id., 2012 WL 2577531, at *2. The Ninth Circuit also has noted that "[18 U.S.C. § 3509(m)] does not require the government to provide the defendant access [to the evidence] at multiple facilities." United States v. Wright, 625 F.3d 583, 618 (9th Cir. 2010). For similar reasons as those expressed by the Maness and Wright courts, this Court concludes that the statute — which only requires that "the Government provides ample opportunity for inspection, viewing, and examination at a Government facility" — plainly does not require the Government to provide the evidence at a particular Government facility just because it is more convenient for a defense expert. 18 U.S.C. § 3509(m) (emphasis added). Thus, the Court concludes that the facts before it do not establish that the Defendant would be denied "ample opportunity" to examine the evidence or that the Government would fail to make such evidence "reasonably available" by requiring the defense expert to travel to Newport

News to examine the evidence.[2] The Court therefore **DENIES** Defendant's motion to compel production of evidence. ECF No. 14.

## IV. Conclusion

For the reasons noted above, the Court **DENIES** Defendant's motion to compel production of evidence. ECF No. 14.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to counsel for Defendant and to the United States Attorney's Office in Newport News, Virginia, as well as to the Managing Assistant United States Attorneys in the Norfolk and

---

[2] While the Court finds that the Government makes the evidence "reasonably available" for review by the Defendant when it allows him "ample opportunity" to review the materials at a Government facility, the Court notes with interest the lack of consistency in the handling of this issue across the various U.S. Attorney's Offices in the Eastern District of Virginia. Defendant cites seven cases from the Norfolk, Richmond, and Alexandria Offices in which AUSAs permitted the transfer of evidence containing child pornography to Government facilities in Spokane, Washington. Peden Decl. 4, ECF No. 14-3. The approach in those cases conflicts with the Government's position here, which is that there is a harm any time child pornography evidence is reproduced in any form. The Government's distinguishing explanation — that in the Government's view the defense expert here will not be able to offer valuable analysis of the evidence — is not entirely convincing as to why a transfer is not warranted. Gov.'s Opp'n Br. 9, ECF No. 17. The Defendant clearly disagrees about the value of the defense expert's analysis and is intent on going forward with it regardless. In any case, the Court would appreciate greater consistency on this issue, as the Government confuses the Court when it fails, without adequate distinguishing explanation, to speak with one voice.

The Court also notes that transfer of the digital evidence to the Spokane facility by means of a password-protected encrypted email appears, at first blush, to be a slightly more reasonable way to handle this issue than insisting on the unnecessary costs of bringing the expert to Newport News. However, in the absence of a clear statutory basis for doing so, the Court will not substitute its own view of the merits of this approach in place of the Government's view by compelling such a transfer in this case. Notwithstanding the Court's ruling on this issue, it notes that the Government did not respond at all to Defendant's explanation of the feasibility of using encryption to mitigate any concerns about the possible accidental disclosure of evidence containing child pornography. See Def.'s Mot. Compel 9, ECF No. 14.

Newport News divisions of the Court, and to the Acting United States Attorney, Tracy Doherty-McCormick.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 15 , 2018