IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:17cr76 |
| | ) | |
| ELMER EMMANUEL EYCHANER, III, | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' MOTION FOR UPWARD DEPARTURE FOR UNDERSTATED CRIMINAL HISTORY AND NOTICE OF INTENT TO SEEK UPWARD VARIANCE

The United States of America, by and through its undersigned counsel, in accordance with the terms of the Sentencing Procedures Order entered on May 18, 2018, respectfully moves this Court to apply an upward departure pursuant to United States Sentencing Guidelines § 4A1.3(a) when sentencing the defendant on August 23, 2018. Additionally, the United States asks this Court to impose a sentence significantly above the advisory guideline range, which range the United States submits, for the reasons stated herein and those to be more fully articulated in the United States' position on sentencing and at the sentencing hearing on August 23, 2018, is not sufficient to accomplish the purposes of sentencing as outlined in 18 U.S.C. § 3553(a).

### MOTION FOR UPWARD DEPARTURE

I. Legal Authority

Section 4A1.3 provides for an upward departure in cases where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." When considering whether such an upward departure is appropriate, the Court is permitted to consider:

> (A) Prior sentence(s) not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses).
>
> (B) Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.
>
> (C) Prior similar misconduct established by civil adjudication or by failure to comply with an administrative order.
>
> (D) Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.
>
> (E) Prior similar adult criminal conduct not resulting in a criminal conviction.

U.S.S.G. § 4A1.3(a)(2). These are examples are representative, not exhaustive. *United States v. Robinson*, 456 F. App'x 283, 290 (4th Cir. 2011) ("Contrary to Robinson's assumption, § 4A1.3(a)(2)'s list of types of information courts can consider in upwardly departing is not exhaustive; instead, it merely provides examples." (collecting authorities)).

In addition to the examples outlined in § 4A1.3, a district court may also consider the "conduct underlying past convictions," including whether a defendant has "received lenient treatment for the offenses" and "the similarity between the conduct underlying [the] offenses and the offense for which he is being sentenced." *Robinson*, 456 F. App'x at 290. The Court may consider these factors even if the past convictions were used to compute the existing criminal history category. *Id.* at 290-291 (quoting *United States v. De Luna-Trujillo*, 868 F.2d 122, 125 (5th Cir. 1989) ("While the prior similar adult criminal conduct that has resulted in conviction may have already been counted under section 4A1.2(e)(1) or (2) when computing the criminal history category, the similarity between the offenses provides the district court with additional reason to enhance the sentence under section 4A1.3."). Such consideration does not result in impermissible double counting, because, "[b]y definition, an upward departure under § 4A1.3 is based on a finding that the defendant's criminal history category does not *fully account* for the seriousness of the defendant's criminal history or the likelihood that he will commit further crimes." *Id.*

(emphasis added); *see also United States v. Dixon*, 318 F.3d 585, 588-89 (4th Cir. 2003) ("[B]y definition, this factor is not otherwise accounted for in the criminal history calculation.").

Relatedly, the Court may also consider convictions that occurred outside the applicable time periods established in § 4A1.2. Indeed, the relevant commentary specifically provides that "[i]f the Court finds that a sentence imposed outside [the applicable] time period[s] is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 (Adequacy of Criminal History Category)." U.S.S.G. § 4A1.2, comment. (n.8).

Other factors that may inform the Court's consideration include whether a defendant has "multiple unscored offenses;" whether, "while incarcerated and on parole," he has "continued to engage in inappropriate and illegal conduct;" and whether the defendant's history includes "increasingly more violent" crimes. *United States v. McNeill*, 598 F.3d 161, 166 (4th Cir. 2010). When determining whether an upward departure under § 4A1.3 is appropriate, the Court is prohibited only from considering "[a] prior arrest record itself." U.S.S.G. § 4A1.3(a)(3).

In cases like the defendant's, the Court is to "determine the extent of a departure under [§ 4A1.3] by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A). If the Court determines that even the highest criminal history category fails to adequately reflect the seriousness of the defendant's criminal history or the likelihood that he will commit other crimes, it may further depart down the sentencing table until it finds an advisory guideline range that adequately accounts for the defendant's criminal history and likely recidivism. U.S.S.G. § 4A1.3, app. n.2(B); *see also United States v. Bellamy*, 264 F.3d 448, 456 (4th Cir. 2001) ("A court's conclusion that even Category VI fails to adequately describe a

particular criminal history necessarily entails a finding that the defendant's record is both egregious and serious."). In such cases, "the upward departure pursuant to § 4A1.3 is actually encouraged, not discouraged." *Bellamy*, 264 F.3d at 456.

When determining whether a departure from Category VI is warranted, the Court should consider the nature of a defendant's prior offenses over their number, as the nature of such prior offenses is "often more indicative of the seriousness of the defendant's criminal record." *Id.* If the Court determines that an upward departure from Criminal History Category VI is warranted, the Court is directed to "structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." U.S.S.G. § 4A1.3(4)(B).

II. Argument

The United States agrees that the probation officer has correctly calculated an advisory guideline range of 262 to 327 months on Count Two, and 120 months consecutive on Count Five, based on an Offense Level of 37 and a Criminal History Category III. However, an examination of the defendant's actual criminal record shows that his current criminal history category substantially underrepresents the seriousness of his criminal history, his repeated criminal conduct while on supervised probation and supervised release, and the likelihood that he will commit other crimes. Indeed, the probation officer noted the potential inadequacy of the defendant's criminal history category as a factor that could warrant departure. PSR ¶ 118.

The defendant's criminal history dates back to 1992, when he was 20 years old, and charged with promoting obscenity to minors in Fargo, North Dakota. The charge stems from an August 21, 1992 incident during which the defendant was a passenger on a bus and engaged in masturbation and a lewd exhibition of male genitals with the intent to promote that performance

to two minors who were 9 and 10 years old. ¶ 50. The defendant later described exposing himself on a public bus, masturbating, and ejaculating in front of two females who were approximately 9 and 10 years old. ¶ 77. Upon pleading guilty on December 11, 1992, the defendant received a lenient sentence—the court deferred his sentence for five years, conditioned upon five years supervised probation. On July 1, 1993, the defendant's sentence was revoked, and the court again deferred imposition of a sentence and placed the defendant on five years supervised probation.

On January 29, 1993, while on supervised probation, the defendant was charged in Fargo, North Dakota, with issuing a check without funds, and on May 14, 1993, the court deferred imposition of a sentence to June 14, 1993, imposed one year of unsupervised probation and prohibited the defendant from maintaining a checking account for one year. ¶ 51.

The defendant's criminal conduct continued to escalate. On May 10, 1994, at the age of 22, the defendant was charged with gross sexual imposition in Fargo, North Dakota. The charges stem from a May 10, 1994 incident where the defendant inserted his penis into the mouth of his four year old victim. ¶ 52. The defendant later stated that he had been on probation and attending mandatory sex offender treatment for approximately one year when he saw a 4 year old boy alone outside, asked the boy if he wanted to see something and took the boy into the foyer of an apartment building. The defendant then told the boy to close his eyes and open his mouth, and the defendant put his penis in his mouth. ¶ 77. On August 24, 1994, the court imposed a six year term of imprisonment, with three years suspended for five years, and three years of supervised probation. The defendant began his term of supervised probation on February 25, 1997, less than one month later, on March 24, 1997, the defendant's probation was revoked, and the court imposed a six year term of incarceration. ¶ 52.

Based on the applicable time periods, the defendant receives criminal history points only for one 2008 federal felony conviction for possession of material containing child pornography. The charges in the federal case stem from a Department of Homeland Security (DHS) investigation, which determined that the defendant attempted to receive child pornography, and purchased a membership at "illegal.cp," a website that distributed child pornography, for $79.99 on May 12, 2006. ¶ 53. A search warrant was executed at the defendant's home, and the defendant's computer was seized. *Id*. A forensic exam of the defendant's computer revealed that he possessed 60 images and 5 videos of child pornography, 6 thumbnail images of child pornography, 699 images of anime or computer generated images depicting child pornography and erotica, and four images and one video of child erotica. The search of his computer also revealed that the defendant was a member of a website named "MrDouble.com" which provided stories about engaging in sexual activities with children, website activity on "12 CHAN," which allows users to share images of children posing in lingerie, and software named "CCleaner," which was used to clean areas of the defendant's hard drive. *Id*. As a result, the defendant is a Criminal History Category III. The United States submits that this category substantially underrepresents the seriousness of the defendant's criminal history and the likelihood that he will commit future crimes.

With respect to the defendant's prior offenses, his criminal history category completely fails to account for the severity of his prior criminal conduct. Moreover, the defendant's prior convictions deal with the sexual exploitation of minors, which is strikingly similar to the conduct that brings the defendant before this Court—attempted receipt of obscene visual representations of the sexual abuse of children, destruction of a tangible object to impede a federal investigation, obstruction of justice-attempted evidence tampering, and penalties for registered sex offenders.

PSR ¶¶ 6-13; *see Robinson*, 456 F. App'x at 290 (describing "the similarity between the conduct underlying [the] offenses and the offense for which [the defendant] is being sentenced" as an appropriate departure facture under § 4A1.3).

The defendant received a significant sentence for his federal conviction—120 months for possession of material containing child pornography. PSR ¶ 53. However, prior to his federal conviction, the defendant was treated very leniently for his serious criminal conduct. *Robinson*, 456 F. App'x at 290 (noting prior lenient treatment for offenses as another departure factor under § 4A1.3). Moreover, the majority of the defendant's prior convictions stem from child exploitation offenses strikingly similar to those before the Court. Despite this extensive history, the defendant receives criminal history points for only his most federal recent conviction. Put simply, the defendant is saved by operation of the applicable time periods under § 4A1.2(e), which place nearly all of his convictions outside the period used to calculate his criminal history. But, the defendant does not deserve the benefit normally conferred by the passage of time. He is not someone who, after a few convictions for minor offenses, refrained from criminal conduct until the instant offenses. Instead, he has become more sophisticated as he continues to sexually exploit minors. During the prior federal investigation into the defendant in 2007, a forensic exam revealed that the defendant had software named "CCleaner," which was used to clean areas of his hard drive. PSR ¶ 53.

After serving a lengthy term of imprisonment for his 2008 federal conviction, the defendant began his period of supervised release on June 16, 2016. According to probation records, as early as June 20, 2016, the defendant admitted in his sex offender group that he had been able to access pornography through a secret app on his phone. On November 17, 2016, the defendant attempted to circumvent the computer monitoring software by speaking his searches for child pornography

7

and child pornography anime using Cortana, a voice controlled virtual assistant for Microsoft Windows 10, instead of typing search terms in the search bar. Although the instant offense and the defendant's most recent conviction involve images of sexual exploitation and not hands on offending of minor victims, the defendant's level of sophistication with technology has progressed as he continues to sexually exploit minors. The defendant's ten year period of imprisonment did little, if anything, to deter him from continuing to sexually exploit minors. Indeed, the defendant's near immediate return to sexual exploitation of minors online underscores this point. PSR ¶¶ 53, 21 (noting the defendant's release date as June 20, 2016 and his date of earliest relevant conduct as November 17, 2016).

Unlike other defendants, the passage of time provides little justification for discounting the defendant's otherwise illustrative criminal history. For all these reasons, his Criminal History Category III utterly fails to account for the defendant's serious criminal history.

That category also completely fails to account for the real likelihood that the defendant will commit other offenses. The defendant's criminal history spans over two decades and includes offenses that pose a danger to the community. Even before beginning his supervised release, the defendant "continued to engage in inappropriate . . . conduct" after he was transferred to Rehabilitation Services, Inc. (RSI) on March 15, 2016. *McNeill*, 598 F.3d at 166. Specifically, the defendant received incident reports for being unaccountable for time, failing to attend a scheduled aftercare appointment on two occasions, and failure to pay subsistence. PSR ¶ 53. Eychaner was released from BOP custody on June 16, 2016, and his discharge report noted that he "did not make an effort nor apply himself to the opportunities available," that he "has a blatant disregard for authority and rules," and that he displayed "manipulative behavior" while housed at RSI. *Id*.

The defendant's criminal history category also fails to account for the numerous uncharged offenses the defendant has admitted to committing during his lifetime including: drowning two kittens in a trough full of cow excrement; pouring sand in a foster brother's mouth and not stopping until an adult intervened, despite the boy choking; approximately 20 acts of exhibitionism, beginning when he was 12 years old; offering a 3 year old female candy to perform oral sex on him, which she did; coercing a boy to touch him in a public bathroom; engaging in sexual contact with sleeping children, by rubbing his penis on their legs, in their hair, on their buttocks and then masturbating and ejaculating on the children; acts of voyeurism resulting in him masturbating and ejaculating on a woman's basement window; bestiality involving cows, dogs, cats, and mice; having sex with a 3 year old girl; fondling his foster father while he slept; masturbating in a women's restroom while a woman was in the next stall and then drinking the toilet water from the stall and masturbating after the woman left; masturbating into a female coworker's change of clothes; and offering to purchase alcohol for a 15 year old female in exchange for oral sex. PSR ¶¶ 62, 76, 86.

The defendant's current criminal history category fails to fully account for the fact that the defendant has strong pedophilic interests and is a sexual recidivist. PSR ¶ 81. Indeed, he was previously assessed to be a high risk sexual offender. *Id*. Given the number, nature, seriousness, and similarity of the defendant's prior offenses, the United States respectfully submits that an upward departure is warranted and necessary to fully account for the seriousness of the defendant's criminal history and the likelihood that he will reoffend.

## NOTICE OF INTENT TO SEEK UPWARD VARIANCE

In addition to moving for an upward departure pursuant to § 4A1.3, the United States hereby provides notice to the Defendant, ELMER EMMANUEL EYCHANER, III, that it will also seek an upward variance from the advisory guideline range set forth in the Presentence Investigation Report. *See also* 18 U.S.C. § 3553(b)(1). The United States proposes the following grounds for the Court to consider in support of its request for an upward variance. First, as outlined above, the advisory guideline range does not address the sexual recidivist nature of the defendant's crimes and the fact that the defendant has three prior convictions related to the sexual exploitation of minors. Relatedly, the range fails to account for the similarity of the defendant's numerous prior convictions. Finally, a sentence within the defendant's advisory guideline range would fail to satisfy the purposes of sentencing outlined in 18 U.S.C. § 3553(a), including the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to protect the public, and to afford adequate deterrence.

The United States will fully address the legal authority supporting its request for an upward variance in its position on sentencing. However, to afford the Defendant adequate time to research and prepare his arguments, the United States provides this notice of its intent to seek such a variance. *See United States v. Washington*, 743 F.3d 938, 934-35 (4th Cir. 2014) (a district court's notice prior to the sentencing hearing that it would "consider sentencing [the defendant] outside the guidelines range" was adequate advance notice to support an upward variance."); *United States v. Davenport*, 445 F.3d 366, 371 (4th Cir. 2006) (district court should give "reasonable notice" that it is considering sentence above the advisory guideline range "on any ground not previously identified by the PSR or one of the parties and to specify the ground of departure.").

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


_____/s/_____
Megan M. Cowles
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Megan.cowles@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel for the defendant:

>Amanda Conner, Esq.
>Andrew Grindrod, Esq.
>150 Boush Street, Suite 403
>Norfolk, Virginia 23510
>(757) 457-0800

I HEREBY CERTIFY that on this 9th day of August, 2018, I sent a true and correct copy of the foregoing to the following by electronic mail:

>Karen R. Franklin
>Senior United States Probation Officer
>827 Diligence Drive, Suite 210
>Newport News, Virginia 23606
>Tel. (757) 223-4673
>Email: Karen_Franklin@vaep.uscourts.gov

_____/s/_____
Megan M. Cowles
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Megan.cowles@usdoj.gov