IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:17cr76 |
| | ) | |
| ELMER EMMANUEL EYCHANER, III, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by G. Zachary Terwilliger, United States Attorney, and Megan M. Cowles, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in Title 18, United States Code, Section 3553(a). The government has no objections to the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is a range of 262 to 327 months' imprisonment. Based upon the nature of the offense, as well as the defendant's characteristics, criminal history involving the sexual exploitation of minors, and designation as a high-risk sexual offender, the United States asks the Court to impose a sentence of imprisonment of 40 years, followed by a lifetime term of supervised release.

## I. BACKGROUND

ELMER EMMANUEL EYCHANER, III, was named in a five-count indictment returned by a grand jury for the Eastern District of Virginia, Newport News Division, on August 16, 2017. The indictment charged EYCHANER with: access with intent to view visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count One); attempted receipt of obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. § 1466A(a)(1) (Count Two); destruction of a tangible object to impede a federal

1

investigation, in violation of 18 U.S.C. § 1519 (Count Three); obstruction of justice-attempted evidence tampering, in violation of 18 U.S.C. § 1512(c)(1) (Count Four); and penalties for registered sex offender, in violation of 18 U.S.C. 2260A (Count Five).

On May 13, 2018, the government filed a motion to dismiss Count One of the Indictment. The motion was granted by the Court and Count One was dismissed on May 14, 2018.

On May 15, 2018, the defendant's jury trial commenced before the Court, and on May 18, 2018, EYCHANER was found guilty of Counts Two through Five of the Indictment. Sentencing was continued pending the completion of a presentence report.

On August 15, 2018, the Court granted the defendant's renewed motion for judgment of acquittal as to Count Five, and the defendant's conviction on Count Five was vacated.

This case arises from the defendant's sexual exploitation of minors while on a lifetime term of supervised release. A federal court in the Eastern District of Virginia, Norfolk Division, imposed a life term of supervised release based on defendant's March 12, 2008 conviction for possession of material containing child pornography, in violation of Title 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), 2256(1), 2256(2) and 2256(8)(A). The defendant began a lifetime term of supervised release under the supervision of the Federal Probation Office for the Eastern District of Virginia in June 2016.

Under defendant's initial terms of supervised release, he was not allowed to have a computer. However, after beginning his term of supervised release, defendant spoke to his probation officer, Supervisory Probation Officer Powers, and told her that he wanted to get a computer to conduct job searches. The defendant agreed in writing that his computer could be monitored and signed forms advising him that the Probation Office would monitor his computer activity in a variety of ways through a third party company, RemoteCOM. The defendant was

specifically advised that the software could restrict and/or record his activity, including keystrokes and internet use history. The defendant also agreed that he would not remove, tamper with, reverse engineer, or in any way circumvent the software. The defendant further agreed that he would not prevent the creation of, alter, or destroy records of computer or mobile device use without prior approval from the Court or supervising probation officer. On August 8, 2016, RemoteCOM monitoring software was installed remotely onto defendant's computer.

In August 2016, Supervisory Probation Officer Powers received information about defendant's computer activity. She spoke to the defendant about his computer activity, and he admitted to searching for clothed images of minors on his computer. The defendant also admitted to using a voice recognition program called Cortana to give voice commands to his computer as a way to circumvent the computer monitoring program. He was instructed to only use his computer for job searching, and the Probation Office allowed him to keep his computer so he could continue to job search.

On the evening of November 17, 2016, defendant used his roommate's wifi to go onto the internet, where he conducted searches on Bing.com using Cortana voice recognition software. Defendant's searches included the use of sexually explicit terms, including "Toddlercon Sex Movies," "show images of lolita sperm," "show images of cg lolita," "Little girls Pervert Paradise," Lolicon 3D images," "Vip Zona 3D Hentai," "Shotacon 3D Little Girl," "Toddlercon Sex," "Animated Toddlercon Sex," "Toddlercon Sex Movies." The related search terms generated by the defendant's Bing.com searches include terms such as "Toddlercon After Sex Animated GIF," "Uncensored Toddlercon Sex Comic," "Toddercon Cum Animated GIF," "Toddlercon After Sex," "Toddlercon Baby Fuck Movies," "3D Uncensored Toddlercon Sex GIF," "CG Porn," "Cg Cute," "Vip Zona Little Girls," and "3D Dad Daughter Little Girl."

The defendant also went to the site "premiumhentai.site." The screenshots of defendant's computer activity on November 17, 2016 introduced by the government range in time from 6:34:24 p.m. to 7:38:27 p.m., which shows that defendant continued to conduct searches after defendant generated search results for obscene images depicting minors engaged in a variety of sexually explicit conduct. After defendant finished conducting his searches, at approximately 8:02:56 p.m. on November 17, 2016, he deleted his search history.

The next morning, on November 18, 2016, defendant initially told Senior Probation Officer Yost that he wanted to return his computer to the store and that the computer monitoring software was too expensive. Less than an hour later, he called her back and stated that he had not been honest with her. He then confessed that he accessed inappropriate images on his computer the night before.

Senior Probation Officer Yost then went to Probation Officer Mako, the probation officer in charge of computer monitoring for the United States Probation Office for the Eastern District of Virginia. Probation Officer Mako examined the defendant's computer account activity and confirmed that defendant engaged in activity consistent with his statement to Senior Probation Officer Yost. Probation Officer Mako also noted that there was no unusual activity in the defendant's keystroke monitoring section from November 17, 2016.

Senior Probation Officer Yost called defendant back and told him she needed to collect his computer. The defendant told her he was at work but would be home later that day. He then told Senior Probation Officer Yost that he had taken his hard drive out of his computer and thrown it down a storm drain on the way to work that day. Senior Probation Officer Yost told him she needed to collect the pieces of his computer.

In the early evening of November 18, 2016, Senior Probation Officer Yost and Supervisory

Probation Officer Powers went to the defendant's residence in downtown Newport News to collect his computer. Senior Probation Officer Yost, Supervisory Probation Officer Powers, and defendant went upstairs to his bedroom, where he confessed to viewing images he described as "anime child pornography" the night before. The defendant gave the probation officers his computer mouse and computer power cord, then led them downstairs and outside his residence. He took them to his trash can, where he removed the pieces of his broken laptop computer and bent battery, and gave them to the probation officers. The computer was missing a hard drive, and the defendant's hard drive was never recovered.

Senior Probation Officer Yost took the pieces of the defendant's computer pieces back with her to her office, and later turned the computer pieces over to FBI Task Force Officer Call, who gave the computer and battery to CFA Jones. CFA Jones could not conduct a forensic examination of the computer because of the missing hard drive.

## II. OBJECTIONS

The defendant makes 14 unresolved objections to the presentence report.

The government agrees with the defendant's objection to paragraphs 16 and 17 regarding restitution, and does not object to those paragraphs being removed from the presentence report. However, the remainder of the defendant's objections are without merit.

### a. Objection to References to "Child Pornography"

The defendant objects to any reference in the presentence report that the images possessed by the defendant are child pornography. This information is included based on the information provided by the probation officers monitoring the defendant, as well as the probation officer's review of the material of the defendant's computer activity. The United States submits there is sufficient indicia of reliability that among the images of obscene anime cartoons the

5

defendant attempted to receive on November 17, 2016, there were also images of child pornography, as defined by 18 U.S.C. § 2256(2)(B)(8). Pursuant to 18 U.S.C. § 2256(2)(B)(8), child pornography includes "any visual depiction" … where: (A) the production of such visual depiction involves the use of a minor engaged in sexually explicit conduct; or (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." The term "indistinguishable" means "virtually indistinguishable, in that the depiction is such that an ordinary person viewing the depiction would conclude that the depiction is of an actual minor engaged in sexually explicit conduct." 18 U.S.C. § 2256(2)(B)(11). The United States will present the evidence of the screenshots of the defendant's computer activity at the defendant's sentencing for a factual determination by the Court.

### b. Objection to the Offense Conduct

The defendant objects to the entire offense conduct section of the presentence report contained in paragraphs 7 through 15. The United States submits that the information contained in these paragraphs was either proven beyond a reasonable doubt at trial, or is included as relevant conduct, based on the information provided by the probation officers who were monitoring the defendant at the time of his criminal conduct. Therefore, this information should remain in the presentence report.

### c. Objection to Paragraphs 6, 10, 11, 12, and 13

The defendant objects to the information contained in paragraphs 6, 10, 11, 12, and 13, arguing that this information is not an accurate depiction of the offense conduct. However, the information contained in these paragraphs was either proven beyond a reasonable doubt at trial, or

is included as relevant conduct. The United States will present at the defendant's sentencing a copy of the defendant's sexual fantasy about having sex with a 9 year old, and the image the defendant searched for of JonBenet Ramsey, which were not presented at his trial, but both of which were captured by the RemoteCOM software.

### d. Objection to Paragraphs 7 and 8- Prior Criminal Convictions

The defendant objects to the information contained in paragraphs 7 and 8, detailing two of his prior criminal convictions, a state conviction for promoting obscenity to minors, and a federal conviction for possession of material containing child pornography. The defendant argues that this information is not part of the offense conduct and should be stricken. Notably, the defendant does not argue that the information contained in paragraphs 7 and 8 is inaccurate or lacks a sufficient indicia of reliability. This information is relevant to the offense conduct, because it relates to why the defendant was on a lifetime term of federal supervision at the time of the instant offenses. Moreover, this information supports the enhancement noted in paragraph 28 of the PSR. Therefore, this information should remain in the PSR.

### e. Objection to Paragraph 14- Images and Video of Child Pornography

The defendant next objects to paragraph 14, which attributes the defendant with 50 images and one video of child pornography, for a total of 125 images. The United States agrees with the determination of the probation officer that the 50 images and one video at issue meet the definition of child pornography in 18 U.S.C. 2256(2)(B)(8), and the United States will offer the images at the defendant's sentencing for a factual determination by the Court.

### f. Objection to Paragraph 18- Vulnerable Victims

The defendant objects to the assertion in paragraph 18 of the PSR that the minors depicted are vulnerable. The United States agrees with the determination of the probation officer that the

material includes images of child pornography, and as noted above, will offer the images at the defendant's sentencing for a factual determination by the Court.

### g. Objection to Paragraphs 20 and 33- Obstruction of Justice

The defendant objects to the information contained in paragraph 20, arguing that he did not obstruct justice. However, based on the defendant's conduct, this enhancement is properly applied.

Section 3C1.1 provides for a two-level enhancement where:

> (1) The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1. The application notes provide examples of covered conduct that include:

> • "[D]estroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence)" (app. n. 4(D)).

EYCHANER was convicted of Destruction of a Tangible Object to Impede a Federal Investigation and Obstruction of Justice – Attempted Evidence Tampering. Ample evidence established that the defendant destroyed evidence immediately after the defendant conducted searches on the internet on November 17, 2016. He immediately deleted his search history. The next day he first told his probation officer that he wanted to return his computer, then called her back about one hour later and stated that he had not been completely honest with her. He subsequently confessed to his searches for "anime child pornography," throwing his hard drive down a storm drain, and called his computer "the danger zone." The defendant's hard drive was never recovered. This type of obstructive behavior is expressly covered by U.S.S.G. § 3C1.1. *See* app. n. 4(D); *United States v. Wade*, 2003 WL 194871, *1 (4th Cir. January 30, 2003) (affirming

application of obstruction enhancement where defendant called his girlfriend and told her to get "the stuff" out of his house); *United States v. Malki*, 609 F.3d 503, 511 (2d Cir. 2010) (upholding obstruction enhancement where defendant deleted cell phone records just before he was interviewed by federal agents).

### h. Objection to Paragraphs 26, 27, and 30

The defendant objects to receiving enhancements for possessing images of prepubescent minors, pursuant to 2G2.2(b)(2), for possessing images depicting sadistic or masochistic conduct, pursuant to 2G2.2(b)(4)(A), and possessing more than 9 images of child pornography, pursuant to 2G2.2(b)(7)(A). The United States agrees with the determination made by the probation officer and will present this material at the defendant's sentencing for the Court to make a factual finding.

### i. Objection to Paragraph 28

The defendant objects to being assessed a five level increase pursuant to USSG §2G2.2(b)(5) for a pattern of activity involving the exploitation of children as outlined in paragraph 28 of the PSR. This claim lacks merit.

U.S.S.G. § 2.2G.2(b)(5) commentary, (n.1) states:

"Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

Furthermore, USSG § 2G2.2, commentary, (n.1) states:

"Sexual abuse or exploitation" means any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251, (a)-(c ), § 2251 (d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C ) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view,

9

receipt, or trafficking in material relating to the sexual abuse of exploitation of a minor.

The defendant was awarded a five point enhancement for prior convictions of promoting obscenity to minors in Fargo, North Dakota in 1992 and gross sexual imposition in Fargo, North Dakota, in 1994. The defendant objects to his prior convictions for promoting obscenity to minors being used against the defendant to enhance his sentencing guideline range, arguing that it is not a qualifying predicate. However, the Fifth Circuit has recognized that displaying the genitals can be sufficient to support an enhancement for pattern of sexual abuse. *United States v. Assiter*, 93 Fed. Appx 655, 2004 WL 635601 (5th Cir. 2004) (Five-level increase to base offense level under sentencing guideline for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor was appropriate where defendant had, at least twice, taken nude photographs of two minor girls while he was wearing only a long shirt, committing the Texas crime of "Indecency With a Child.").

Even if the defendant's conviction for promoting obscenity to minors was insufficient to support the five-level enhancement, the Commentary Application note 1 is very clear. A conviction is not required for the enhancement to apply. PSR paragraphs 76-77, 81, and 86 show a pattern of the sexual exploitation of other children. EYCHANER's admissions about his history of sexual abusing minors, coupled with the defendant's prior convictions, are sufficient to support the five-level enhancement for pattern of sexual abuse.

**j. Objection to Paragraph 53- Admission to Using Computer to Search for Child Pornography and Anime**

The defendant objects to the information contained in Paragraph 53 that he admitted to searching for child pornography. The United States submits that this is an accurate recitation of the defendant's statement to his probation officer, and the United States will present evidence of

this admission at the defendant's sentencing.

### k. Objection to Paragraphs 62, 63, 64, 76, 77, 78, 81, 82, 84, 86, and 91- Records of Sex Offender Therapy

The defendant objects to any information from his previous sex offender therapy being included in the presentence report. Although the defendant claims he was assured by treatment providers that the information would not be used against him, this claim ignores that a federal judge previously required the defendant to waive confidentially regarding his treatment program, in order to allow communication between the probation office and the treatment providers. Moreover, the probation officer noted that the evaluations clearly state that the defendant was advised of the limits of confidentially regarding the treatment program. The United States will present this evidence at the defendant's sentencing.

The defendant's prior treatment in sex offender therapy, including the length of treatment, type of treatment, and the defendant's conduct during treatment, is directly relevant to the term of imprisonment this Court should impose, as well as any treatment recommendations the Court should make regarding this defendant.

### l. Objection to Paragraph 84

The defendant objects to information in paragraph 84 relating to the BOP reports, which indicated treatment staff encouraged the defendant to address his tendency to portray himself as a victim to minimize his responsibility. This information is accurate based upon information provided by BOP to the probation officer. As such, it should not be stricken from the PSR.

### m. Objection to Paragraph 92- Deceptive Polygraph Results

The defendant objects to the information regarding polygraph examinations conducted during supervision, arguing that the results lack sufficient indicia of reliability. Paragraph 92 notes that the defendant was found to be deceptive on two polygraph exams administered on July

11

1, 2016 and September 30, 2016 after his release from the Bureau of Prisons. Both exams included the time frame since his release from prison, and both determined that the defendant showed deception regarding questions relating to having unsupervised contact with anyone under 18 and having sexual contact with anyone under the age of 18.

The United States recognizes that the results of a polygraph are inadmissible in nearly every circumstance at trial. *See, e.g.*, *United States v. Porter*, 821 F.2d 968, 974 (4th Cir. 1987). However, the results of polygraph examinations may properly be considered before this Court at sentencing pursuant to 18 U.S.C. § 3661, which states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Indeed, this Court has recently considered deceptive polygraph results at the sentencing of *United States v. Dobbins*. Case No. 4:17cr129 (E.D. Va. June 7, 2018). The Court can evaluate how much weight to give the results of both polygraphs in light of the fact that the results of polygraph examinations are not generally admissible at trial, but the defendant's deception on both exams about his unsupervised contact and sexual contact with minors after his release from federal prison is relevant under the 3553(a) factors, and there is a sufficient indicia of reliability that the tests occurred, and that the results were determined to be deceptive. Therefore, this information should remain in the PSR.

### n. Objection to Paragraph 93- Minimizing Conduct at the Peninsula Therapy Center

The defendant objections to the notation contained in paragraph 93 of the presentence report that he attempted to minimize his behavior when he said he only looked at anime child pornography. However, this statement is an attempt to minimize his behavior, especially because he also blamed his probation officer "for not putting additional layers of security in place to prevent

12

him from searching for pornography" and "placed the responsibility on others, stating he was not given the measures needed to prevent him from relapsing." PSR ¶ 93. The statement that the defendant attempted to minimize his behavior is accurate, and is relevant because if he chooses not to take responsibility for his criminal conduct, he is more likely to continue to sexually exploit children in the future. The statement is accurate and should remain in the presentence report.

The defendant's objections to the presentence report are thus without merit.

### III. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they

deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

### IV. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

**A.  Nature and Circumstances of the Offense and Defendant's History and Characteristics**

The nature of the charges to which the defendant has been convicted, attempted receipt of images of minors engaging in sexually explicit conduct, as well as destruction of evidence and obstruction of justice, in and of itself calls for a substantial term of imprisonment. The defendant attempted to receive graphic depictions of children engaged in a range of sex acts, and his searches included thousands of images of obscene anime cartoons, as well as child pornography images. The defendant chose to engage in this criminal conduct knowing that his computer was being monitored by the Federal Probation Department. He also tried to hide his crimes by using Cortana, deleting his search history, and then destroying his hard drive. He also initially gave false information to his probation officer about why he wanted to get rid of his computer. This is a significant escalation from his previous conduct of utilizing "CCleaner" to clean areas of his

14

computer hard drive, which was detected during the prior federal investigation of the defendant conducted by the Department of Homeland Security (DHS). ¶ 53.

The Court should take these aspects of the defendant's crime and characteristics into consideration when deciding what a reasonable sentence should be for the defendant.

### B. Defendant's Criminal History

One of the most aggravating factors in this case is the defendant's substantial history of sexually exploiting children.

EYCHANER's first criminal conviction came when he was approximately 20 years old and convicted of promoting obscenity to minors in Fargo, North Dakota. The charge stems from an August 21, 1992 incident during which the defendant was a passenger on a bus and engaged in masturbation and a lewd exhibition of male genitals with the intent to promote that performance to two minors who were 9 and 10 years old. ¶ 50. The defendant later described exposing himself on a public bus, masturbating, and ejaculating in front of two females who were approximately 9 and 10 years old. ¶ 77. Upon pleading guilty on December 11, 1992, the defendant received a lenient sentence—the court deferred his sentence for five years, conditioned upon five years supervised probation. On July 1, 1993, the defendant's sentence was revoked, and the court again deferred imposition of a sentence and placed the defendant on five years supervised probation.

On January 29, 1993, while on supervised probation, the defendant was charged in Fargo, North Dakota, with issuing a check without funds, and on May 14, 1993, the court deferred imposition of a sentence to June 14, 1993, imposed one year of unsupervised probation and prohibited the defendant from maintaining a checking account for one year. ¶ 51.

15

On May 10, 1994, at the age of 22, the defendant was charged with gross sexual imposition in Fargo, North Dakota. The charges stem from a May 10, 1994 incident where the defendant inserted his penis into the mouth of his four year old victim. ¶ 52. In a chilling admission, the defendant later stated that he had been on probation and attending mandatory sex offender treatment for approximately one year when he saw a 4 year old boy alone outside, asked the boy if he wanted to see something and took the boy into the foyer of an apartment building. The defendant then told the boy to close his eyes and open his mouth, and the defendant put his penis in his mouth. ¶ 77. On August 24, 1994, the court imposed a six year term of imprisonment, with three years suspended for five years, and three years of supervised probation. The defendant began his term of supervised probation on February 25, 1997, less than one month later, on March 24, 1997, the defendant's probation was revoked, and the court imposed a six year term of incarceration. ¶ 52.

The defendant has also made various statements during treatment, in which he admitted to acts of sexual abuse and animal abuse for which he has not been prosecuted, including: drowning two kittens in a trough full of cow excrement; pouring sand in a foster brother's mouth and not stopping until an adult intervened, despite the boy choking; approximately 20 acts of exhibitionism, beginning when he was 12 years old; offering a 3 year old female candy to perform oral sex on him, which she did; coercing a boy to touch him in a public bathroom; engaging in sexual contact with sleeping children, by rubbing his penis on their legs, in their hair, on their buttocks and then masturbating and ejaculating on the children; acts of voyeurism resulting in him masturbating and ejaculating on a woman's basement window; bestiality involving cows, dogs, cats, and mice; having sex with a 3 year old girl; fondling his foster father while he slept; masturbating in a women's restroom while a woman was in the next stall and then drinking the

toilet water from the stall and masturbating after the woman left; masturbating into a female coworker's change of clothes; and offering to purchase alcohol for a 15 year old female in exchange for oral sex.   PSR ¶¶ 62, 76, 86.

EYCHANER preys on the weak and vulnerable, and he poses a serious danger to children, adults, and animals.  Everything about his behavior indicates that he will continue to reoffend absent incarceration.  EYCHANER's criminal conduct, which he began almost immediately after his release from a 120 term of imprisonment demonstrates his lack of respect for the law and the continued danger he represents to the community.

### C. Need to Deter Future Criminal Conduct and to Protect the Public

The defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public.  The Court must fashion a sentence that will help the defendant and others hesitate, at least, before engaging in criminal conduct online.  The government avers a sentence of 40 years would be appropriate to deter the defendant and others in the future.

### D. Need to Provide Treatment to Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated.  Furthermore, based on the defendant's history of alcohol abuse, it appears that he may benefit from substance abuse treatment.

### E. Need to Avoid Unwarranted Sentencing Disparities

Based on the defendant's prior criminal history, 18 U.S.C. § 1466A(a)(1) calls for a mandatory minimum sentence of 15 years and a maximum of 40 years, and authorizes a term of supervised release up to life.  A long sentence of imprisonment is necessary prior to any supervised release, and the defendant's repeated criminal conduct while on probation and

supervised release indicates the need for strict terms of supervision.

The defendant's crimes, history, and characteristics all support a severe sentence of imprisonment. As such, the need to avoid unwarranted sentence disparities clearly weighs in favor of a significant sentence of imprisonment of sentence of imprisonment of 40 years, followed by a lifetime term of supervised release.

## V.     Conclusion

The government respectfully submits that a sentence of forty years, followed by a term of lifetime supervision, is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the court to impose the same.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  _____/s/_____
Megan M. Cowles
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Telephone: (757) 591-4000
Fax: (757) 591-0866
E-mail Address: Megan.Cowles@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing (NEF) to the following:

> Amanda Conner, Esq.
> Andrew Grindrod, Esq.
> (Counsel for defendant)

I FURTHER CERTIFY that on this 16th day of August, 2018, I caused a true and correct copy of the foregoing Position of the Government with Respect to Sentencing Factors to be e-mailed to the following:

> Karen R. Franklin
> Senior United States Probation Officer

By:        /s/
Megan M. Cowles
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Telephone: (757) 591-4000
Fax: (757) 591-0866
E-mail Address: Megan.Cowles@usdoj.gov